IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SYNARTIS INCOME FUND, LLC, et al.,

      Plaintiffs,

v.                                Case No. 1:24-cv-00187-AW-MAF

CP HOLDINGS CONSOLIDATED VII,
LLC, et al.,

      Defendants.

_____/

## PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND FOR ENTRY OF FINAL JUDGMENTS AGAINST DEFENDANTS, JOINTLY AND SEVERALLY, AND MEMORANDUM OF LAW

SYNARTIS INCOME FUND, LLC; CATALYST SYNARTIS CP MASTER 4A-2023, LLC; AND SYNARTIS CAPITAL MANAGEMENT, LLC (collectively, the "**Plaintiffs**"), by and through the undersigned counsel, seek to enforce a binding settlement reached between the Plaintiffs and the Defendants and request that the Court enter final judgment against the Defendants for their breach of the settlement. In support of this Motion, Plaintiffs state as follows:

### I.  Introductory Statement

The Plaintiffs seek to enforce a settlement reached between the parties on February 6, 2025, which is documented through a signed binding Settlement Term

Sheet (as defined below) that resolved all six related actions before this Court. After signing the binding Settlement Term Sheet, and after considerable effort (and legal fees) had been expended by the Plaintiffs drafting a comprehensive settlement agreement based on the binding Settlement Term Sheet, the Defendants repudiated their obligations. In short, the global settlement was premised on Defendant Shively's funding of over $40 million in settlement payments over a five-year period. However, in late April 2025, Ms. Shively (through new counsel) communicated to the Plaintiffs that she was unable or unwilling to fund the required payments. The Plaintiffs now seek a judgment against the Defendants based on their material breach of the settlement.

## II. Background Facts

### A. General Background

On October 25, 2024, the Plaintiffs filed a Complaint (ECF No. 1) against the Defendants initiating the above-captioned case. This action is one of six (6) related cases pending before this Court (the "**Synartis Actions**"[1]) involving six different loans (the "**Synartis Loans**") extended by Plaintiffs and their affiliates to borrowers that are part of a mixed-use development in Gainesville, Florida called Celebration

---

[1] The Synartis Actions consist of Case No. 24-cv-00187-AW-MAF; Case No. 24-cv-00191-AW-ZCB; Case No. 24-cv-00192-AW-ZCB; Case No. 24-cv-00193-AW-MAF; Case No. 24-cv-00194-AW-MJF; and Case No. 24-cv-00195-AW-HTC.

Pointe (the "**Development**"). Each of the Synartis Loans had a similar makeup of primary obligors and guarantors.

The primary obligor(s) for each loan are one or more single-purpose entities (i.e., here Defendant CP Holdings Consolidated VII, LLC) (the "**SPE Obligors**"). Each of the Synartis Loans is guaranteed by Defendants Patricia A. Shively ("**Shively**") and Svein H. Dyrkolbotn ("**Dyrkolbotn**"). Shively also guaranteed the loans as trustee of her trust. The named trust defendant is Patricia A. Shively, as Trustee of the Irrevocable Trust of Patricia A. Shively u/a/d/ October 26, 2010 (the "**Shively Trust**," and together with Shively, the "**Shively Parties**").[2]

On March 14, 2024, well before the Plaintiffs filed the Complaint, certain affiliates of the SPE Obligors filed chapter 11 bankruptcy petitions with the United States Bankruptcy Court for the Northern District of Florida, Gainesville Division: Celebration Pointe Holdings, LLC ("**CPH**") (Case No. 24-bk-10056-KKS); Celebration Pointe Holdings II, LLC ("**CPH II**") (Case No. 24-bk-10057-KKS); and SHD-Celebration Pointe, LLC ("**SHD**") (Case No. 24-10058-KKS) (collectively, the "**Chapter 11 Cases**"). CPH, CPH II, and SHD may sometimes be collectively referred to as the "**Chapter 11 Debtors**." As discussed below, the Chapter 11 Cases remain pending and no chapter 11 plan has been confirmed. (Declaration of Chris

---

[2] As discussed below, during the course of settlement, Plaintiffs learned that Ms. Shively's trust is actually a *revocable* trust, not an *irrevocable* trust. This discrepancy was remedied through the Settlement Term Sheet.

Johnston in support of this Motion (the "**Johnston Declaration**") at ¶ 5. The Johnston Declaration is being filed concurrently but separately from this Motion.)

This action is based on a Master Credit Facility Agreement entered into between Plaintiffs Synartis Income Fund, LLC and Catalyst Synartis CP Master 4A-2023, on the one hand, and Defendant CP Holdings Consolidated VII, LLC ("**CPHC VII**" or "**Borrower**") and two of the Chapter 11 Debtors, CPH and CPH II, as additional borrowers, on the other hand.[3]  The Master Credit Facility Agreement provided for a mezzanine credit facility with potential availability of up to $30,000,000 (the "**Credit Facility**"). The borrowers, however, only drew the first $12,100,000 on the Credit Facility, as evidenced by a Secured Promissory Note executed and delivered to Plaintiff Catalyst Synartis CP Master 4A-2023, LLC, which is in the original principal amount of $12,100,000 (the "**Credit Facility Note**"). (Johnston Decl. ¶ 6). Defendants Shively and Dyrkolbotn each executed a guaranty in connection with the Credit Facility Note. Shively also executed a guaranty as Trustee the Shively Trust. (*Id.* at ¶ 6).

Through its Complaint, the Plaintiffs seek judgments against the Defendants—obligors and guarantors that are not Chapter 11 Debtors and are not subject to the automatic stay imposed by 11 U.S.C. § 362.

---

[3] Neither CPH nor CPH II are defendants in this action, and the Plaintiffs seek no relief against the Chapter 11 Debtors in this case.

### B. Events Leading Up to the Settlement

Since the filing of the Chapter 11 Cases, the Plaintiffs and their affiliate lenders (the "**Synartis Lenders**"[4]) worked with the Chapter 11 Debtors, the SPE Obligors, Shively, and Dyrkolbotn to negotiate a consensual resolution and structured repayment terms for the Synartis Loans. At all times, the parties have acknowledged that any settlement with the Synartis Lenders would need to be funded by the Shively Parties, as guarantors of each of the Synartis Loans. This is because the Chapter 11 Debtors' assets are believed to be fully encumbered by liens senior to the Synartis Lenders' liens, and the other guarantor, Svein Dyrkolbotn, is believed to be not readily collectable. (Johnston Decl. ¶ 7).

Over the course of their settlement efforts, the parties have reached agreement on settlement terms twice, only to see the Shively Parties—the funding source for each of the settlements—renege on their commitments. The parties first reached a settlement in principle after attending mediation on August 14, 2024. Although the mediation concluded without a settlement, the parties continued to negotiate. Ultimately, in September 2024, the parties agreed on the principal terms of a settlement and restructured payment terms. However, in October 2024, the Shively Parties reneged on that settlement before it was finalized. This first failed round of

---

[4] "Synartis Lenders" shall refer to, collectively, all of the plaintiffs in the six civil actions pending before this Court: Synartis Capital Management, LLC; Catalyst Synartis MF B Series MF 2A-2022, LLC; Catalyst Income Fund 2022-1A, LLC; Catalyst Synartis MF B Series Condo 3A-2023, LLC; Synartis Income Fund, LLC; and Catalyst Synartis CP Master 4A-2023, LLC.

settlement discussions resulted in the Plaintiffs and the other Synartis Lenders filing their lawsuits in this Court on October 24, 2024, seeking to enforce their rights against non-Chapter 11 Debtor obligors and guarantors of the Synartis Loans. (Johnston Decl. ¶ 8).

On November 18, 2024, the Chapter 11 Debtors filed their *Joint Second Amended Plan of Reorganization for Celebration Pointe Holdings, LLC, et al.* (Chapter 11 Cases, Case No. 24-bk-10056-KKS, ECF No. 198) (the "**Second Amended Plan**"). A copy of the Second Amended Plan is attached as **Exhibit A** to the Declaration of Charles A. Postler filed in support of this Motion (the "**Postler Declaration**"). (The Postler Declaration is being filed concurrently but separately from this Motion.) The Second Amended Plan was premised on contributions by the Shively Parties to the Chapter 11 Debtors to fund certain plan payments, including payments to the Synartis Lenders. The introduction to the Second Amended Plan lays this out:

> The Plan is premised on a Plan Support Agreement ("PSA") between the primary interest holders of Debtors, Mr. Svein Dyrkolbotn ("Dyrkolbotn") and Ms. Patti Shively ("Shively"). Under the PSA, Dyrkolbotn and Shively are agreeing to defer payment on Claims, and, most importantly, **make member loans or contributions to cover operating deficits such that Reorganized Debtors can make all payments required on the Effective Date and Plan Payments due over time as set forth below** (the "PSA Contributions").

(Second Amended Plan p. 3) (emphasis added).

The Synartis Lenders objected to the Chapter 11 Debtors' disclosure statement in connection with the Second Amended Plan. Over the Synartis Lenders' objections, the Bankruptcy Court conditionally approved the disclosure statement. However, the Bankruptcy Court's approval of the disclosure statement was based in part on the Chapter 11 Debtors' stipulation that they were relying solely on the ability of the Shively Parties to fund the payments due to the Synartis Lenders:

> as to the Debtors' ability to pay the payments proposed to be paid to the Synartis Creditors in the Second Amended Plan (ECF No. 198), Classes 11 through 16, the Debtors are relying solely on the ability of Patricia Shively to fund such payments to meet the requirements of Bankruptcy Code Section 1129(a)(11) (the "**Feasibility Stipulation**").

(Chapter 11 Cases, Case No. 24-bk-10056, ECF No. 228, Interim Order Conditionally Approving Second Amended Disclosure Statement (Doc. 197) and Scheduling a Status Conference as to Confirmation (the "**Disclosure Statement Order**")). A copy of the Disclosure Statement Order is attached as **Exhibit B** to the Postler Declaration.

The Synartis Lenders, the Defendants, and the Chapter 11 Debtors recommenced settlement discussions in earnest in January and February of 2025. (Johnston Decl. ¶ 9). On February 6, 2025, the morning before a key hearing in the Chapter 11 Cases before Judge Specie, the parties agreed to the terms of a settlement to resolve all liability related to the Synartis Loans on a global basis. (*Id.* ¶ 10). Because the Synartis Lenders were unwilling to risk the agreement failing like the

first negotiations, this time the settlement terms were documented in a binding Settlement Term Sheet dated February 6, 2025 (the "**Settlement Term Sheet**"). A copy of the Settlement Term Sheet is attached as **Exhibit A** to the Johnston Declaration. (*Id.* ¶ 11).

The Settlement Term Sheet is signed by Svein H. Dyrkolbotn, on behalf of himself and on behalf of the Chapter 11 Debtors and the SPE Obligors; Patricia A. Shively on behalf of herself, individually, and in her capacity as Trustee of the Patricia Ann Shively Amended and Restated Trust; and by Chris Johnston, on behalf of the Synartis Lenders.[5]

## C. The Settlement

The Settlement Term Sheet contains detailed settlement terms set forth in 40 bullet points broken out into five separate sections. Importantly, the Settlement Term Sheet expressly provides that it is a *binding* settlement term sheet:

---

[5] Specifically, the Settlement Term Sheet lists the following Synartis Lenders: Synartis Capital Management, LLC; Catalyst Synartis MF B Series MF 2A-2022, LLC; Catalysts Income Fund 2022-A1, LLC; Catalyst Synartis MF B Series Condo 3A-2023, LLC; Synartis Income Fund, LLC; and Catalyst Synartis CP Master 4A-2023, LLC.

**SETTLEMENT TERM SHEET**

Set forth below is the ==binding== settlement term sheet (the "Term Sheet") agreed to by the Debtors, the affiliated SPEs that are borrowers under the Synartis loans (the "SPEs"), Patricia Shively in her individual capacity and as trustee of her amended and restated trust ("Shively"), Svein Dyrkolbotn ("Dyrkolbotn"), and the Synartis lenders (collectively, the "Parties"). For purposes of this Term Sheet, the Debtors, the SPEs, Shively, and Dyrkolbotn shall sometimes be referred to collectively as the "Obligors". The settlement terms below will be incorporated into a definitive settlement agreement (the "Settlement Agreement").

(Settlement Term Sheet p. 1).

Accordingly, the Settlement Term Sheet establishes the terms of a binding settlement between the parties. For purposes of this Motion, the key terms of the settlement are summarized below:

> ***Agreement on Synartis Lenders' Claim Amounts.*** The Parties[6] agreed
> to settlement of the Synartis Lenders' Claim amount, presented in the
> Settlement Term Sheet in the aggregate. The Parties agreed that the Synartis
> Lenders' aggregate Claim was $42,782,391.66 as of March 31, 2025. The
> Claim would continue to accrue interest at the contract and default interest
> rates under the applicable loan documents through the Effective Date of the
> Chapter 11 Debtors' Plan.

---

[6] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Term Sheet.

***Payment Terms.*** The settlement included structured payment terms for the repayment of the Synartis Lenders' Claim. The Obligors agreed to an annual interest rate of 14% and monthly payments consisting of interest-only payments for the first 12 months and payments based on a 30-year amortization for the remaining 48 months. In addition to the monthly payments, the Obligors agreed to pay one (1) lump-sum payment of $2.5 million on the Effective Date of the Plan, and four (4) annual payments of $5.625 million beginning on July 31, 2026.[7] Any remaining balance due after the above-described payments would be paid on the five-year anniversary of the Effective Date.

***Right to Payment from Sale of Equity Interests in Tower Companies.*** The settlement further provides a right to payment to the Synartis Lenders from any sale proceeds received by Shively or the Shively Trust of their equity interests in Tower Hill Insurance Company and affiliate entities. The Settlement Term Sheet provides: "Upon any sale of any equity interests in the Tower companies owned by Shively or the Shively Trust, Shively and/or the Shively Trust will agree to pay thirty-three percent (33%) of the gross proceeds received by them (the "Tower Payment") to the Synartis lenders to

---

[7] The annual payment would be made earlier if Shively or the Shively Trust received their quarterly distribution from the Tower companies prior to July 31 for the years in which the payment was due.

be applied to the then outstanding balance of the Claim." The "Tower companies" referred to in the Settlement Term Sheet are: Tower Hill Insurance Group, LLC; Tower Hill Claims Service, LLC; Bluegrass Insurance Management, LLC; and any other affiliate of the foregoing entities in which the Shively Defendants have an equity interest. (collectively, the "**Tower Companies**"). (Johnston Decl. ¶ 12).

*Payment of the Synartis Lenders' Attorney's Fees.* The settlement provided that the total legal fees and costs of the Synartis Lenders would be owed in addition to the Claim. (Settlement Term Sheet p. 2). The Legal Fees claim was to be paid either on the effective date of the Plan or over 60 months at a 14% interest rate. The Settlement Term Sheet further provided that as of January 31, 2025, the Legal Fees claim was approximately $350,000.00. However, the Settlement Term Sheet contemplated that the *actual* amount of the Synartis Lenders' attorney's fees and costs, which now well exceed $350,000, would be fixed through attachment of a schedule to the settlement agreement.

*Stipulations for Entry of Consent Judgment.* The settlement also requires the execution of a stipulation for entry of consent judgment by the Defendants. This provision states:

> The SPEs, Shively, the Shively Trust, and Dyrkolbotn will execute a stipulation for entry of a consent judgment. The

11

stipulation and consent judgment will also be binding on the heirs, personal representatives, trustees, successors and assigns of those Obligors. The original stipulation and consent judgment would be held by Stichter, Reidel, Blain & Postler, P.A. to be filed with the appropriate court upon the occurrence of an Event of Default. The Parties agree to cooperate in seeking retention of jurisdiction in connection with the settlement, by either the Bankruptcy Court or the **U.S. District Court for the Northern District of Florida** (at Synartis's election), **such that one of those courts will retain jurisdiction to enter the consent judgment upon the occurrence of an Event of Default**.

(Settlement Term Sheet p. 3)

*Releases by Obligors*. The settlement provides for releases by the Obligors and other customary provisions:

The Settlement Agreement will contain customary provisions such as representations and warranties as to authority and enforceability of the Settlement Agreement, the full release of Synartis by the Obligors and the Debtors and all of their respective affiliates together with covenants not to sue, a reaffirmation of the loan documents including the guaranties, a stipulation as to the amount of the indebtedness, and a reaffirmation of the Synartis liens and security interests including the pledges.

(Settlement Term Sheet p. 4).

*Other Provisions*. The settlement includes numerous other provisions governing the rights and obligations of the Parties during the settlement term. However, in light of Shively's and the other Obligors' repudiation of the settlement, discussed below, those provisions do not warrant in-depth discussion at this stage.

The Settlement Term Sheet also resolved a disputed issue that arose during the course of settlement discussions. One of the defendants in this action is Patricia A. Shively, as Trustee of the Irrevocable Trust of Patricia A. Shively u/a/d/ October 26, 2010. This description of Shively's trust matches the description on the guaranty agreement. However, Shively's counsel represented that Shively does not in fact have an irrevocable trust and that the actual trust party is the Patricia Ann Shively Amended and Restated Trust, which is a *revocable* trust. (Postler Decl. ¶ 7). Thus, Shively signed the Settlement Term Sheet as Trustee of the Patricia Ann Shively Amended and Restated Trust.

**D. Events Following the Signing of the Settlement Term Sheet**

After the Parties signed the Settlement Term Sheet, the Synartis Lenders, through the undersigned law firm, began working diligently on the terms of the comprehensive settlement agreement contemplated by the Settlement Term Sheet. (Postler Decl. ¶ 8). The Synartis Lenders incurred tens of thousands of dollars in attorney's fees drafting the comprehensive settlement agreement, exhibits, and schedules. (Johnston Decl. ¶ 13).

On March 11, 2025, the Chapter 11 Debtors incorporated the material terms of the settlement into their Second Amended Plan through the filing of their *Modifications to Joint Second Amended Plan of Reorganization for Celebration Pointe Holdings, LLC, et al.* (Case No. 24-bk-10056-KKS, ECF No. 266) (the "**Plan**

**Modification**," and the Second Amended Plan as modified by the Plan Modification, the "**Modified Second Amended Plan**"). A copy of the Plan Modification is attached as **Exhibit C** to the Postler Declaration.

On March 14, 2025, the Synartis Lenders sent a draft settlement agreement incorporating the terms of the Settlement Term Sheet to Shively, through her counsel, and to the other parties to the Settlement Term Sheet. (Postler Decl. ¶ 11). On March 26, 2025, Shively, through counsel, provided their comments to the draft settlement agreement. (*Id.*) The Synartis Lenders' counsel continued working on the detailed exhibits to the settlement agreement, including the stipulations for entry of consent judgment contemplated by the settlement. (*Id.*)

Nothing seemed to be amiss until, on April 21, 2025, counsel for the Chapter 11 Debtors in the Chapter 11 Cases, Scott Shuker, Esq., sent an urgent email to set up a Zoom meeting for 5:00 p.m. that day with the attorneys for the key stakeholders in the Chapter 11 Cases, including the undersigned counsel for the Synartis Lenders. (Postler Decl. ¶ 12). At that meeting, Mr. Shuker informed the Synartis Lenders and the other stakeholders that Shively was backing out of the deal and no longer intended to honor her commitments to the Chapter 11 Debtors and the lenders (including the Synartis Lenders). (*Id.*) Later that week, on April 25, 2025, counsel for the Synartis Lenders participated in a conference call with counsel for the Shively Parties, where the Shively Parties' counsel confirmed the Shively Parties' intent to

withdraw their support for the Modified Second Amended Plan and their intent not

to proceed forward with the settlement as structured in the binding Settlement Term

Sheet. (Postler Decl. ¶ 13.)

A hearing was already scheduled in the Bankruptcy Court on May 1, 2025,

scheduled as the hearing on confirmation of the Modified Second Amended Plan.

After Shively backed out of the binding agreement, on April 24, 2025, the Chapter

11 Debtors filed a motion to continue the confirmation hearing, stating:

> 6.   Although the Debtors have reached agreements with
> almost all classes of creditors including Classes 1 and 2
> related to the CDD Bonds securing the Debtors' real
> property (and it appears all impaired classes have voted in
> favor), the Plan has always been reliant on execution of a
> Plan Support Agreement and in excess of $37,000,000 in
> funding from Ms. Shively on the Effective Date
> ("Effective Date Distributions"). Moreover, the Effective
> Date Distributions were contingent on Ms. Shivley [sic]
> being able to consummate a liquidity event in her personal
> financial assets to generate sufficient funds to make the
> Effective Date Distributions.
>
> 7.   On April 21, 2023, Debtors learned that the liquidity
> event was in doubt and there was no ability for Ms. Shively
> to fund the Effective Date Distributions. As such, the Plan
> is not currently feasible.

(Chapter 11 Cases, Case No. 24-bk-10056-KKS, ECF No. 296). A copy of the

motion to continue is attached as **Exhibit D** to the Postler Declaration.

The Bankruptcy Court held a hearing on May 1, 2025, to consider the status

of the Chapter 11 Debtors' reorganization efforts. The Chapter 11 Debtors' counsel,

Scott Shuker, Esq., explained Shively's withdrawal as a funding source for the Debtor's Modified Second Amended Plan and the dim outlook for an alternative restructuring plan. Shively's counsel, Dylan Trache, Esq., communicated to the Court that Shively was unable to fulfil her funding commitments:

> Dylan Trache on behalf of Ms. Shively. Your Honor, it is an unfortunate situation. Ms. Shively's ability to fund the effective date payments was premised upon an extraordinary liquidity event in her life, which we had understood was going to take place, but which is also outside of her control. And we've now learned about a week or ten days ago that it's not going to happen, at least not in the near term. And so as Mr. Shuker represented, the plan as it stands now with Ms. Shively as the sole source of funds is simply not feasible, and it doesn't look like -- you know, if I could tell you, well, she's going to get the money in 30 days, we would ask for that, but I don't have the confidence to go there. So, unfortunately, we agree that the best path forward is to either find replacements to fund the plan or an orderly liquidation. Chapter 7 or a dismissal would be a disaster, I think, for everybody involved.

(Hrg. Tr. May 1, 2025, at 14:18–15:15, Case No. 24-10056-KKS, attached as **Exhibit E** to the Postler Declaration).

Given that Shively will no longer fund the plan obligations, including obligations under the settlement to the Synartis Lenders, and the Debtors' own admission that the Modified Second Amended Plan is not feasible, the Obligors (as defined in the Settlement Term Sheet) have clearly evinced their intention not to perform on the settlement set forth in the Settlement Term Sheet. The Synartis Lenders, through counsel, have had several discussions with Shively's counsel since

the April 21, 2025 revelations. (Postler Decl. ¶ 15). The Shively Parties' counsel has made it clear that the Shively Parties do not intend to perform on their obligations under the Settlement Term Sheet. (*Id.*) Due to Shively's unwillingness or inability to fund, the Modified Second Amended Plan will not be confirmed. Accordingly, the Synartis Lenders now seek to enforce the Settlement Term Sheet and obtain judgments against the Defendants.

### E. The Amount Due to the Plaintiffs in this Action Pursuant to the Settlement

Because the Settlement Term Sheet provides for an agreed upon claim amount of $42,782,391.66 for the Synartis Lenders, aggregating the amounts due on all of the Synartis Loans, it is necessary for purposes of this motion to isolate the balance of the loan specific to this action (the Credit Facility Note).[8] As illustrated below and as supported by the Settlement Term Sheet and other evidence, the Plaintiffs seek entry of a judgment in this action against the Defendants for $15,094,638.90, with prejudgment interest continuing to accrue, based on their material breach of the Settlement Term Sheet.

The total amount of $42,782,391.66 stated in the Settlement Term Sheet was a negotiated amount beginning with a spreadsheet provided by Plaintiffs' counsel to then-counsel to the Shively Parties, Edward Peterson, Esq., on January 17, 2025,

---

[8] The Plaintiffs in the five other related actions will be filing nearly identical motions to enforce the Settlement Term Sheet in each such action.

titled "LOAN BALANCES-CP Loans-Analysis (as of 3.31.25)." (Postler Decl. ¶ 9). This analysis calculated the projected balances of the Synartis Loans as of March 31, 2025. Specific to this action, the projected balance of the Credit Facility Note was reflected as $14,577,138.89 as of March 31, 2025. (*Id.* ¶ 9).

As settlement discussions progressed, the Defendants raised an issue regarding the calculation of the loan balances and inclusion of certain late fees as part of the loan balance of the Credit Facility Note, the loan that is the subject of this action. (Johnston Decl. ¶ 14). The parties agreed, under the settlement, to reduce the total balance by $87,500 in resolution of the dispute. (*Id.*). Applying the negotiated $87,500 reduction to the total balance set forth on the spreadsheet emailed January 17, 2025, resulted in a total settlement balance across all Synartis Loans of $42,782,390.66 as of March 31, 2025.[9]

After applying the $87,500 negotiated reduction to the Credit Facility Note, the loan-specific balance for the Credit Facility Note equals $14,489,638.89 as of March 31, 2025, exclusive of attorney's fees, costs, and continued accrual of non-default and default interest. (Johnston Decl. ¶ 15). Interest has accrued since April 1, 2025, at the rate of $6,722.22 per diem. (*Id.*). In total, the per diem accrual from April 1, 2025, through June 30, 2025, equals an additional $605,000.00. (*Id.*). Thus,

---

[9] There is a one dollar difference between the $42,782,391.66 stated in the Settlement Term Sheet compared to the actual total of $42,782,390.66, which is the result of a scrivener's error.

the total amount due under the Settlement Term Sheet attributable to the loan that is the subject of this action, the Credit Facility Note, is $15,094,638.90 as of June 30, 2025, exclusive of legal fees and costs. (*Id.* at ¶ 16). Interest continues to accrue at the per diem rate.

Additionally, the Settlement Term Sheet provides for payment of the Synartis Lenders' attorney's fees and costs. The parties agreed that, as of January 31, 2025, the Synartis Lenders' aggregate attorney's fees and cost amount was approximately $350,000. The Synartis Lenders' total attorney's fees and costs far exceed $350,000 as of the filing of this motion. As requested below, the Plaintiffs and the other Synartis Lenders request that the Court determine their entitlement to recover attorney's fees and costs as part of the settlement and reserve jurisdiction to determine and apportion the amount across the different Synartis Actions.

### III.      <u>Argument and Memorandum of Law</u>

Plaintiffs seek to enforce the Settlement Term Sheet through the Court's inherent authority to enforce settlement agreements. The Settlement Term Sheet evidences a clear and mutual desire to resolve the issues in this action and contains the essential terms of the agreement between the Plaintiffs and the Defendants. The Defendants have repudiated their obligations under the Settlement Term Sheet by clearly indicating their intent not to perform. The Plaintiffs are entitled to entry of a

judgment against the Defendants based on their repudiation and breach of the Settlement Term Sheet.

### A. The Court has authority to enforce the Settlement Term Sheet and enter judgment against the Defendants.

The District Court has the inherent authority to enforce settlement agreements. *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991). Further, "in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Under Florida contract law, a party seeking to enforce a settlement agreement must prove by a preponderance of the evidence that the opposing party assented to the terms of the agreement. *Carroll v. Carroll*, 532 So. 2d 1109, 1109 (Fla. 4th DCA 1988); *see also Welch v. N. Am. Tank Line, Inc.*, No. 8:06-CIV-2340-T-17-MAP, 2008 U.S. Dist. LEXIS 64879, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) (applying the preponderance of the evidence standard in accordance with Florida contract law).

"The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." *Ford*, 928 F.2d at 1122. Courts "favor and encourage settlements in order to conserve judicial resources [and] cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the

settlement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1487 (11th Cir. 1994). Moreover, a court may summarily enforce a settlement agreement without holding an evidentiary hearing unless "there is a substantial factual dispute as to the terms of the settlement." *Hall v. Watson*, 734 F. Sup p. 3d 1281, 1285–86 (M.D. Fla. 2024) (quoting *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994)).

**B. The Settlement Term Sheet constitutes a binding settlement enforceable by the Court.**

In both Florida and federal courts, "settlements are highly favored and will be enforced whenever possible." *Broadnax v. Sand Lake Cancer Ctr., P.A.*, 819 F. App'x 799, 801 (11th Cir. 2020) (citing *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985)). Settlement agreements are enforced as often as possible in order conserve judicial resources. *See Long Term Mgmt., Inc. v. Univ. Nursing Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1998). Additionally, a settlement agreement need not be in perfect form to be enforceable against the parties, provided that it reflects a clear and mutual desire to resolve the issues and contains the essential terms of the agreement. *See Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974) ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and *intend the agreement to be binding on them*."). More particularly, Florida law requires that in seeking to compel enforcement of a settlement agreement

"its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Don L. Tullis and Assoc., Inc. v. Benge*, 473 So. 2d 1384 (Fla. 1st DCA 1985); *see also Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2003) (stating that "uncertainty as to nonessential elements . . . will not preclude enforcement of a settlement agreement").

A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law. *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987) (citation omitted). There are four requirements to an enforceable contract: "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Crowley Mar. Corp. v. Linda Mar Imports Inc.*, 576 F. Supp. 3d 1268, 1272 (S.D. Fla. 2020) (quoting *W. Constr., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012)). "A promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." *Crowly*, 574 F. Supp. 3d at 1272 (quoting *Ashby v. Ashby*, 651 So. 2d 246, 247 (Fla. 4th DCA 1995)). Forbearance of a legal remedy constitutes consideration. *See id.*

All four elements have been satisfied in this case. As established by the detailed terms of the Settlement Term Sheet and the factual background laid out in Section II above, the Plaintiffs and the Defendants engaged in lengthy negotiations

that led to the signing of the binding Settlement Term Sheet. Consideration is clearly established—the Plaintiffs agreed to forbear from seeking judgment, take payments over an extended term (with a balloon payment), and reduce the contractual interest rate over the term. Finally, the terms of the settlement described in the Settlement Term Sheet are sufficiently specific to allow all parties to ascertain their obligations.

**C. The Court should enter a final judgment against the Defendants based on their breach of the Settlement Term Sheet.**

The settlement contained in the Settlement Term Sheet at all times relied on Shively to fund the agreed-upon payments to the Plaintiffs and the other Synartis Lenders. Shively's unilateral action to rescind on her agreement to fund the payments to the Synartis Lenders and crater the Chapter 11 Debtors' reorganization efforts constitutes a repudiation and material breach under the Settlement Term Sheet. Plaintiffs and the other Synartis Lenders are entitled to judgments against the Defendants based on this breach.

"Once an agreement to settle is reached, one party may not unilaterally repudiate it." *Hall v. Watson*, 734 F. Supp. 3d 1281, 1285 (M.D. Fla. 2024) (quoting *Reed By & Through Reed v. United States*, 891 F.2d 878, 881 n.3 (11th Cir. 1990)). Anticipatory repudiation occurs where a party engages in "words or acts evincing an intention to refuse performance in the future." *AECOM Tech. Servs., Inc. v. Pro. Servs. Indus., Inc.*, 580 F. Supp. 3d 1176, 1194 (M.D. Fla. 2021) (quoting *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. 5th DCA 2007)).

Further, where an enforceable settlement agreement is reached—whether through an oral agreement or a term sheet—a party may not unilaterally revoke an enforceable agreement simply because it later refuses to sign a later comprehensive settlement agreement. *See Am. Appraisal Assocs., Inc. v. Am. Appraisals, Inc.*, 531 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008) (enforcing settlement based on oral agreement where party later refused to sign written settlement agreement); *Reed By & Through Reed v. United States*, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988), *aff'd*, 891 F.2d 878 (11th Cir. 1990) (stating that "the physical act of signing a document is a mere formality where the parties clearly intend to be bound").

The conduct of the Defendants clearly evidences their intention not to perform under or follow through with the settlement set forth in the Settlement Term Sheet. After the signing of the Settlement Term Sheet, which by its terms is binding on the signatories, counsel for the Synartis Lenders diligently worked on drafting a comprehensive settlement agreement based on the binding Settlement Term Sheet. Indeed, the Synartis Lenders incurred significant attorneys' fees drafting the agreement. The parties traded comments on the agreement, and the Synartis Lenders transmitted final drafts of all of the exhibits to the settlement agreement, including stipulations for entry of consent judgment and form judgments. Further, the Chapter 11 Debtors incorporated the material terms of the settlement into their Modified Second Amended Plan through their Plan Modification.

Then, abruptly on April 21, 2025, counsel for the Synartis Lenders learned from the Chapter 11 Debtors' counsel that Shively was backing out as the funding source for the Modified Second Amended Plan and the payments committed to in the Settlement Term Sheet. On April 25, 2025, counsel for Shively confirmed that she would not be proceeding to sign a comprehensive settlement agreement based on the Settlement Term Sheet or perform on her obligations agreed upon in the Settlement Term Sheet. Although the Shively Parties claim that the failure of a personal "liquidity event" resulted in her inability to fund the settlement obligations, the Settlement Term Sheet is not conditioned on the occurrence of any such liquidity event.

Plaintiffs are entitled to entry of a judgment against CP Holdings Consolidated VII, LLC, Svein H. Dykolbotn, Patricia A. Shively, and the Patricia Ann Shively Amended and Restated Trust (the "**Judgment Parties**"). The Settlement Term Sheet fixed the aggregate liability of the Defendants to the Synartis Lenders, and the Plaintiffs in this action have established the portion of agreed-upon settlement liability specific to the loan that is the subject to this action, the Master Credit Facility Note, at $15,094,638.90 as of June 30, 2025. (Johnston Decl. ¶ 17). Interest continues to accrue at the rate of $6,722.22 per diem.

Judgment is appropriate because the Settlement Term Sheet specifically contemplated entry of a judgment against the Judgment Parties in the event of a

default through a stipulation for consent judgment. As discussed above, the Judgment Parties' refusal to sign the comprehensive settlement agreement or the stipulation for consent judgment, which was an exhibit to the comprehensive settlement agreement, does not prevent the Court from enforcing the Settlement Term Sheet and the material terms agreed upon. The settlement called for entry of a judgment in the event of default. The Judgment Parties have materially breached the Settlement Term Sheet through repudiation. Entry of a judgment is appropriate as an exercise of this Court's inherent power to enforce settlements.

### D. Additional relief requested.

In addition to entry of a money judgment against the Judgment Parties, the Plaintiffs also request the following relief pursuant to the Court's power to enforce settlements and order specific performance of settlement obligations.

First, the Plaintiffs request that the Court give effect to the Shively Parties' agreement to pay to the Synartis Lenders a 33% portion of any gross proceeds received by the Shively Parties from their sale of any ownership interests in the Tower Companies as a pay-down to the settlement amount. (Settlement Term Sheet p. 2). The parties expressly agreed to this provision, and the provision was an integral part of the settlement. Consistent with the Settlement Term Sheet, any such payment would be credited to the judgment awarded in this action, or to any of the other

judgments that may be obtained against the Shively Parties in the other Synartis Actions, as determined by the Synartis Lenders.

Second, the Plaintiffs request that the Court give effect to the Defendants' agreement to provide a full release and covenant not to sue in favor of the Synartis Lenders, including the Plaintiffs. The Settlement Term Sheet expressly provides for such releases and covenants (Settlement Term Sheet p. 4), and the Synartis Lenders relied on this consideration in entering into the Settlement Term Sheet. As discussed above, the Defendants should not be able to escape their obligations and commitments by refusing to sign the definitive settlement agreement after entering into the binding Settlement Term Sheet and agreeing to provide such releases and covenants.

Third, the Plaintiffs ask that the Court find that they are entitled to recover reasonable attorney's fees and costs incurred pursuing collection, including fees incurred in connection with the Chapter 11 Cases. Under the Settlement Term Sheet, the parties stipulated that the Synartis Lenders' "Legal Fees" would be added to their claim amount and agreed to repayment terms for the Legal Fees claim. (Settlement Term Sheet p. 2). The parties agreed that, as of January 31, 2025, the Legal Fees were approximately $350,000. The Synartis Lenders' total attorney's fees and costs far exceed $350,000 as of the filing of this motion. The Plaintiffs ask the Court to determine that the Plaintiffs are entitled to attorney's fees and costs, reserving

jurisdiction to determine the amount and apportionment across the related Synartis Actions.

## IV.    Conclusion

In conclusion, the Plaintiffs requests entry of a judgment against the Defendants based on their repudiation and material breach of the Settlement Term Sheet.

WHEREFORE, Plaintiff respectfully requests that the clerk enter an order and final judgment as follows:

A. Granting this Motion;

B. Entering Final Judgment in favor of Plaintiff Catalyst Synartis CP Master 4A-2023, LLC[10] in the amount of $15,094,638.90, plus pre-judgment interest from the date of June 30, 2025, through entry of the Final Judgment at the rate of rate of $6,722.22 per diem, against CP Holdings Consolidated VII, LLC; Svein H. Dykolbotn; Patricia A. Shively; and Patricia A. Shively as Trustee of the Patricia Ann Shively Amended and Restated Trust;

C. Ordering and directing that the Shively Parties pay to Plaintiff Catalyst Synartis CP Master 4A-2023, LLC a 33% portion of any gross proceeds received by the Shively Parties from their sale of any ownership interests

---

[10] Although there are three Plaintiffs in this action, the Plaintiffs request entry of judgment in favor of Plaintiff Catalyst Synartis CP Master 4A-2023, LLC, the entity that is the payee under the Credit Facility Note.

in the Tower Companies, to be credited against the balance of the Final Judgment, or to any of the other judgments that may be obtained against the Shively Parties in the other Synartis Actions, as determined by the Synartis Lenders;

D. Finding and concluding that the Judgment Parties have released any and all claims, defenses, or counterclaims that have been raised or could be raised against the Plaintiffs related to the Synartis Loans;

E. Providing for post-judgment interest at the statutory rate;

F. Determining that the Plaintiffs are entitled to attorney's fees and costs;

G. Reserving jurisdiction to determine the amount of attorney's fees and costs Plaintiffs are entitled to;  and

H. Awarding such other and further relief the Court deems just.

## **CERTIFICATE OF RULE 7.1(B) CONFERENCE**

I hereby certify, pursuant to Local Rule 7.1(B), that I have conferred in good faith regarding the relief requested in this motion, and that the opposing parties do not consent to the relief requested.

## <u>CERTIFICATE REGARDING RULE 7.1(F) WORD LIMIT</u>

I hereby certify that this motion and memorandum consists of 6,649 words, exclusive of case style, signature block, and certificate of service. This motion is in compliance with the 8,000 word limit set forth in Local Rule 7.1(F).

DATED: July 3, 2025

<div style="margin-left: 40%;">

*/s/ Matthew B. Hale*
Matthew B. Hale (FBN 0110600)
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144
mhale@srbp.com
Attorney for Plaintiffs

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document has been filed on June 30, 2025, via CM/ECF, which will serve the document on all parties receiving electronic noticing.

<div style="margin-left: 40%;">

*/s/ Matthew B. Hale*
Matthew B. Hale (FBN 110600)

</div>